## The Sharon Iron Co. *versus* The City of Erie.

*Conditions in a Deed construed.—Remedy for Breach, by Forfeiture of Estate.— Waiver of Forfeiture.*

1. A condition that destroys an estate is to be taken strictly, and if once dispensed with in whole or in part, is dispensed with for ever, for it is entire and cannot be apportioned except by act of the law.

2. When language in a deed imports a condition merely and there are no words importing an agreement, it cannot be enforced as a covenant, but the only remedy is through a forfeiture of the estate.

3. A forfeiture may be waived by the party who has the right to avail himself of the breach of a condition, by acts as well as by express agreement.

4. A city corporation by deed conveyed certain water lots to a company for a nominal sum, on condition that they should within one year erect a breakwater in front of the lots, under direction of city councils, and within two years a substantial bloomery thereon: the breakwater was built, but failing to erect the bloomery within the time, the city councils permitted them to build a blast-furnace instead, and extended the time for construction: no

[Sharon Iron Co. *v.* City of Erie.]

furnace was built, and the city brought ejectment for the lots, which, meanwhile, after the failure of the company, had passed into other hands: *Held*, That the city was not entitled to recover, for the grant was in fee simple with but two conditions annexed, one of which had been performed, and the other expressly dispensed with, and waived by the grantor, plaintiff.

ERROR to the Common Pleas of *Erie county.*

This was an action of ejectment, brought May 8th 1858, by the City of Erie against the President, Directors and Company of the Sharon Iron Company, and George Boyce, for water lots Nos. 31 to 40, inclusive, situate in the city of Erie, and the inshore lots belonging to the same. Issue being joined on the plea of not guilty, the jury found the following special verdict :—

"That the title to the real estate in suit was vested in the plaintiff before and at the date of the conveyance of the same by the plaintiff to the defendant, on the 8th day of January 1852. That upon that day plaintiff conveyed to the defendant, the Sharon Iron Company, subject to the conditions, provisions, and stipulations of the resolutions of the councils of the city of Erie, passed September 1st 1851; articles of agreement of January 20th 1837, between the borough of Erie and water-lot owners, recorded Book K., p. 438; and agreement between the same parties, dated September 12th 1846, recorded Book U., p. 565—all of which, together with the deed from the City of Erie to the Sharon Iron Company, June 8th 1852, recorded Book T., p. 250; resolutions of the City Councils of May 3d 1852, and July 10th 1854; Act of Assembly of 29th March 1805; and petition of George Boyce, agent of the Sharon Iron Company, to the Mayor, Select and Common Councils of the City of Erie, filed July 10th—are made parts of this special verdict, as fully as if they were at length set forth therein. That the Sharon Iron Company have, as provided in the resolutions and deed referred to, erected and constructed the breakwater therein mentioned, and have expended money in the piering and improvement of the inshore lots; in all, including amount of cost of construction of breakwater, of from $16,000 to $17,000. That neither the bloomery or blast furnace, mentioned in the resolutions and deed, have been constructed. Defendants have received rents to amount of about $400 per annum. If, on the facts, the court shall be of the opinion that in law the plaintiff is entitled to recover, then they find for the plaintiff; but if the court, on these facts, shall be of opinion that in law the plaintiff is not entitled to recover, then they find for the defendant."

The special verdict was argued April 18th 1861, and on the 9th of September 1861, the court below (JOHNSON, P. J.) directed judgment to be entered for plaintiff on the special verdict, and

[Sharon Iron Co. *v.* City of Erie.]

filed the following opinion, in which the terms of the conveyance referred to are set out :—

"It is clear that the deed of the 8th of June 1852, and the resolutions of the City Councils of September 1st 1851, together, constitute one contract, one muniment of title, and contain the self-made law by which the rights of the parties are to be determined, unless relieved from it by some paramount law. By this contract the estate granted by the plaintiff to the defendants was a conditional one, made so by clear intention and by apt words, that leave no room for criticism or construction.

"Although the form of a public sale at auction was gone through, because the law of the case required it, yet the moneyed consideration named was evidently a nominal one; the paramount consideration or purpose of the sale was to procure the erection, in the city of Erie, of a bloomery and iron manufacturing establishments, and its incidental advantages to the business and prosperity of the city.

"It is not denied that the vendor had a right to make a conditional sale, nor is it alleged that any fraud or mutual conception of law or fact occurred in the transaction.

"The conditions imposed are properly four :—

"1st. That the alienees shall, 'within one year, erect a breakwater in front of each of said lots, under the direction of the city councils.'

"2d. That they shall, 'within two years, erect a good and substantial bloomery thereon, or within the limits of the city.'

"3d. That they 'shall continue the occupancy of the said lots for the purpose aforesaid.'

"4th. 'They shall also be subject to the same ordinances and regulations required of purchasers of water-lots heretofore sold.'

"As to the first and last of these conditions, no questions have been raised in the argument of the case. The first has been substantially complied with, and the last has not been reached.

"No bloomery was built. No reasons affecting the rights of the city of Erie are given for not building it. Some time in the year 1854—the date is not given—a petition was drawn up and presented on behalf of the Sharon Iron Company, presenting excuses for not having built the bloomery, admitting their obligation to do so, and praying the city authorities to substitute a blast furnace for a bloomery, and extend the time for its completion to the 1st of November 1855.

"In response to this petition, the councils finally passed their resolution of July 10th 1854, substantially acceding to their request.

"But no blast furnace was built, and no excuse is offered for not doing it.

[Sharon Iron Co. *v.* City of Erie.]

" This action is brought to enforce the alleged forfeiture of the title to the said lots, by non-compliance with the conditions of the grant.

" The recovery is resisted on the ground that the conditions agreed upon and made part of the conveyance are void: 'First, because they are uncertain, incongruous, and impossible of performance ; secondly, because they are a practical restriction upon the alienation of the title ; and, thirdly, because the waiver of the original condition made the title to the lots absolute, and it cannot be encumbered by any subsequent conditions agreed on, not being embodied in the conveyance.' These are good reasons to prevent the reinvestiture of the title in the plaintiff, if supported by the facts.

" Is there anything uncertain, incongruous, or impossible of performance in the requirement to erect a bloomery on their lots or elsewhere, within the limits of Erie city, within two years? No more so than to erect the breakwater, which they did, or in the contract to build a dwelling-house on the lots conveyed, as in Hamilton *v.* Elliott, 5 S. & R. 375; or in the undertaking to pay certain bonds given by the grantors, as in Bear *v.* Whisler, 7 Watts 144; or in the conditions imposed on the grantee, that at her death she should leave lawful issue that would live to the age of twenty-one years, as in Westenberger *v.* Reist, 1 Harris 594. Yet all these were held to be conditions, upon the failure of which the estate should become forfeited. In the older cases cited in their support, many conditions less explicit than this were held to create contingent estates, subject to revert or take another channel upon non-compliance. Here the time and place within which the condition was to be performed are clearly designated, viz.: within two years, and within the city limits, on these lots, or elsewhere in the city.

" The obligation to 'erect a good and substantial bloomery,' has no element of uncertainty or incongruity about it; nor is there any as to the place, for any place within the city would have been sufficient. Then, as the anticipated benefits to result from the performance of the condition were incidental or collateral, and to the person or body politic of the grantor, and not to the estate granted, no encumbrance or peril to the title is created by this condition. Nor does the objection that the grant thus interpreted tends to create a perpetuity or an inalienable estate, apply to this condition. Whenever performed, the title would have become absolute so far as that was concerned. Indeed, if the bloomery had been built, the ultimate incidental advantages to the city would have been an equivalent for the ground-rent, the payment of which, it has been held, may be made the contingency upon which a fee should vest.

" The subsequent condition requiring continuity in the ' occu-

pancy of said lots for the purposes aforesaid,' may be liable to the objections suggested by the learned counsel, on the grounds of its uncertainty, its remoteness, and as containing a practical restriction upon alienation. Upon this point we express no opinion, as from the view we take of the case that question does not necessarily arise.

. " That view is this : admitting that condition to be incongruous, too remote, and in restraint of alienation, it does not relieve the defendants from the performance of the other prior conditions that are not obnoxious to such or any other objections. If two conditions are imposed as preliminary to the acquisition of title, the first possible and the second impossible, the law may relieve against the consequences of not performing the latter. But this furnishes no excuse for non-compliance with the former, which is legal and possible. A man must do justice before he asks equity. This is not a case for the infliction of penalties on the grantor, who may have innocently, though unadvisedly embraced in his contract a condition which the law in its policy cannot sanction. The law regards all forfeitures with disfavour. While it will protect the title of the alienee against incongruous and uncertain conditions calculated to bind or fetter it in its transmission, it will at the same time be just to the alienor, by allowing him all the legal consideration for which he stipulated. Otherwise, a vendor might avoid the payment of the entire consideration of his purchase by the insertion in his contract of some trivial or unimportant condition, which turns out to be against the policy of the law, such as a restraint upon alienation. Such a rule would not be in harmony with the justice which our laws seek always to administer.

" But it is urged that the city, by resolution of her councils, dated July 10th 1854, waived any forfeiture that had occurred. We do not so understand the action of the city councils. At the request of the defendants the councils resolved ' that the Sharon Iron Company be permitted to erect a good and substantial blast furnace on their water-lots, or within the limits of the city, instead of a bloomery, &c.,' and extend the time for its construction to the 1st of November 1855. There is no waiver of any rights either asked or granted. The defendants asked a favour, not a forfeiture, and it was granted. Is there any justice in visiting upon the plaintiff the penalty of a forfeiture of its title for yielding to the earnest request of the vendees in a matter affecting their interests alone, and without any consideration ? The fairest interpretation to be given to the action of the councils is, that it was a consent on their part not to insist on their right of defeasance, if the vendees would erect, as they proposed, a blast furnace in their city by November 1st 1855. They exacted no contract, took no covenant from defendants to do so ; but

[Sharon Iron Co. *v.* City of Erie.]

had the furnace been built, equity would have relieved the defendants against an attempt on the part of the plaintiff to re-enter, on account of their not having built the bloomery. But the furnace not having been built, and the condition upon which the plaintiff agreed to forego the right of forfeiture being unperformed, the city is remitted to its original rights, and may now claim the right of re-entry for condition broken."

Judgment having been entered accordingly, the defendants sued out this writ, and assigned for error the entry of judgment for the plaintiff.

The case was argued in this court for plaintiff in error by *W. A. Galbraith* and *Eli K. Price,* who, considering the first and fourth conditions as either fully performed or not reached, contended that there was no covenant whatever on the part of the grantees, inasmuch as they had never sealed the deed: Wilson *v.* Bachmin, Bright. Rep. 545; Maule *v.* Weaver, 7 Barr 329; and that this fact gave no additional force to the stipulations as conditions; that the law was averse to forfeitures: 4 Kent 129; 12 Barb. 440; 3 Harris 307; that the fee was in the Sharon Company, who had expended large sums of money on it in good faith, with the approbation of the grantors, and were therefore entitled to the protection of the court: 2 Story's Eq. 1316; 3 Watts 331; 2 Conn. 299; 1 Ed. Ch. 394; 8 Harris 251; and that the second and third conditions, or (as they preferred designating it) the second condition, was not available to defeat the title in fee simple already vested,

1. Because it is contradictory and irreconcilable in its terms, and uncertain: Newkirk *v.* Newkirk, 2 Caines 352; Ryan & Moo. 52; 2 Comyn's Dig. 94, *Cond.* D 4; Shep. Touch. 128; 4 Kent 131.

In doubtful cases an estate should be construed to be absolute rather than defeasible: Manderson *v.* Lukens, 11 Harris 33; Amelia Smith's Estate, Id. 11; Rewalt *v.* Ulrich, Id. 388.

2. The condition is repugnant to the estate granted: Newkirk *v.* Newkirk, 2 Caines 352. The option to build the bloomery on these lots, or anywhere within the city of Erie, is in the grantees, for it is in the alternative: Layton *v.* Pierce, 1 Doug. 15. The condition cannot frustrate the precedent grant by anything in it express or implied, which is incident or inseparable from the thing granted: Stukely *v.* Butler, Hob. 170; 5 Vin. 503, pl. 25; Reifsnyder *v.* Hunter, 7 Harris 41; Walker *v.* Vincent, 7 Id. 369; 5 Vin. Abr. 102; 2 Caines 352; Keppell *v.* Bailey, 2 Mylne & Keene 517, 535; 1 Smith's Lead. Cases 36; Law Lib., vol. 45, p. 88; Ackroyd *v.* Smith, 70 Eng. C. L. Rep. 164, 186.

The covenant to maintain the bloomery and blast furnaces

would not inhere in the title to these lots, and run with the land: Spencer's Case, 3 Co. 16; 1 Smith's Lead. Cases 75. See also 7 Watts 147; 3 Harris 309.

3. In this case there was a clear and technical conveyance to the Sharon Company in fee: Hileman v. Bouslaugh, 1 Harris 353. And the law does not allow restraints or alienation, but avoids them even against the clear intention of the grantee: Reifsnyder v. Hunter, 7 Harris 44; Walker v. Vincent, Id. 372. Hence there shall be no reversion by implication: Gadbery v. Sheppard, 27 Miss. 203; Kerlin v. Campbell, 3 Harris 500; Griffits v. Cope, 5 Id. 96–99. See also 9 Casey 415; 12 Id. 407; Ware v. Cann, 10 B. & C. 435; McCullough v. Gilmore, 1 Jones 370, 374.

This doctrine does not conflict with the law of easements under which lands may be burdened, because they are freely alienable as distinct species of property: Lewis on Perp. 599, 619. But where there is a conveyance in fee, without rent or reversion, conditions to defeat the grant must come within the rule prohibiting perpetuities: Id. 615, 616; Smith v. Townsend, 8 Casey 434; Church v. Green, 3 Gray 142; 1 Jarman on Wills 783; Smith on Ex. Int. 699; McWilliams v. Nisby, 2 S. & R. 507–513. The cases of Hamilton v. Elliott, 2 S. & R. 375, Bear v. Whisler, 7 Watts 144, and Westenberger v. Reist, 1 Harris 594, cited for defendant in error, do not conflict with this doctrine.

4. The city of Erie waived the forfeiture, if any accrued, by the resolution of July 10th 1854. The condition was entire, and could not be waived or dispensed with in part, without being entirely lost. Nor could the resolution insert a new obligation in the deed: 4 Co. R. 119; 1 Smith's Lead. Cases 61; 2 Cruise 4; 1 Inst. 236; Shep. Touch. 126; Plowd. 133; Cowp. 803; 1 Smith's Lead. Cases 18; Doe v. Mengs, 4 B. & C. 606; Newman v. Rutter, 8 Watts 55. The city has also charged the land with taxes, in the name of the present owners. The condition being waived, there can be no entry now for a breach of it: Dicky v. McCulloch, 2 W. & S. 100; Chalker v. Chalker, 1 Conn. 79; Co. Lit. 274; 6 Whart. 263; 12 Barb. 440; 32 Maine 397.

There was no trust imposed upon the title for the city, as is argued, either express or implied: Kisler v. Kisler, 2 Watts 323.

5. If this be not an equitable ejectment to enforce performance of a condition, the title cannot revert without previous entry: Litt. 351; Shep. Touch. 154; Co. Lit. 218 b, note, 133; Tallman v. Snow, 35 Maine 342; Mamick v. Andrews, 25 Maine 525; Phelps v. Chester, 12 Iredell 194; 1 Saund. 287; McCormick v. Connell, 6 S. & R. 151; Bowen v. Bowen, 18 Cont. 535; Cross v. Carson, 8 Blackf. 138; Ludlow v. Railroad Co., 12 Barb. 440.

6. If it be to enforce an equity, the estate will not in equity

[Sharon Iron Co. *v.* City of Erie.]

be divested for breach of a condition subsequent : Livingston *v.* Tomkins, 4 Johns. Ch. 415.

7. This is, on all the facts, an action to enforce the performance of a condition, if it has any validity ; and the judgment of the court below may be reversed, affirmed, or modified here : Act of 1836. Such relief may be given as on a bill in equity : Wheeler *v.* Walker, 2 Conn. R. 196, 299.

The plaintiffs in error are purchasers for a large sum of money, and can be relieved in this court : Grunstone *v.* Bruce, 1 Salk. 156 ; Hart *v.* Homiller, 3 Harris 251 ; Salisbury *v.* Bennet, 3 Vern. 223. If any stipulation is to be enforced, time should be given to defendants to accomplish the decree of the court. If the decree be difficult, it will serve to show the uncertainty of the stipulation. Even if terms be imposed on the plaintiff below upon a recovery, as that they shall refund the costs of the improvement, it will be difficult to do so, because it was never contemplated by the parties.

*John H. Walker* and *B. Grant*, for defendants in error.—The Sharon Company having failed, and the lots held by them under the conditions above mentioned having passed to P. M. Price and J. D. Whetham, who do not move towards the bloomery or blast furnace, the city is entitled to the judgment rendered in the court below, because,

1. The deed of June 8th 1852, the resolution of September 1st 1851, and the contracts of January 20th 1837, and September 12th 1846, together, constitute the contract between the city and the company : Bear *v.* Whisler, 7 Watts 144 ; 1 Hilliard on Real Property 363, and Westenberger *v.* Reist, 1 Harris 594.

2. The company under this contract took a conditional fee : 1 Hilliard on Real Prop. 363 ; 4 W. Kent 119 ; 5 S. & R. 375 ; 7 Watts 144 ; 1 Harris 594.

We deny that the unperformed conditions are more uncertain, incongruous, contradictory, or impossible than that which was performed, or which are found in the cases of Hamilton *v.* Elliott, 5 S. & R. 375, Bear *v.* Whisler, 7 Watts 144, or Westenberger *v.* Reist, 1 Harris 594. Nor do they tend to create a perpetuity repugnant to the estate granted, or which in any way restrains the alienation of the title. The "bloomery" might have been erected " within two years," and then the fee, so far as this condition is concerned, would have been in the company without condition.

As to the third condition, until the company had erected the bloomery or blast furnace, and thereby entitled themselves to " continue the occupancy," &c., they cannot raise the question of the uncertainty, remoteness, or practical restriction or alienation of the condition.

[Sharon Iron Co. *v.* City of Erie.]

The fair, true, and legal construction of the condition is, that if the bloomery is erected on these lots, the company shall *so* continue to occupy them, but if erected anywhere else *in the city*, the company is excused from "thus occupying them." This construction destroys the whole argument of plaintiffs in error, and renders the principle in 2 Caines inapplicable. Beside, there is no such condition in this deed as there was in Newkirk *v.* Newkirk, 2 Caines 352.

To comply with the condition in this deed it is not necessary, as is said, to "occupy these lots *for all time*." One year's occupancy or less would have been a compliance with its terms.

The cases cited for plaintiff in error from 7 Harris 41 and 369, 2 Mylne & Keene, 70 Eng. C. L. Rep. 164, are unlike the one now under consideration.

We answer the point made as to the "waiver of the condition," by referring to the opinion of Judge Johnson on this part of the case.

Even admitting the force of plaintiff's argument as to the perpetuity, remoteness, incongruity, &c., still all this does not relieve the company from the performance of the other conditions which are not obnoxious to these objections, and which were required by the terms of the deed, and which might have been performed: 1 Hilliard 380.

The opinion of the court was delivered, February 3d 1862, by

READ, J.—A condition that destroys an estate is to be taken strictly, and it is established law that a condition once dispensed with, in the whole or in part, is dispensed with for ever, and as to all the land, for a condition is entire, and cannot be apportioned except by act of law. It will be found, upon an examination of the case before us, that this proposition covers all that it is material for us to decide.

By a resolution of the councils of the city of Erie, of the 1st September 1851, B. F. Eaton & Co., or any other company or individual, and their successors, were allowed to purchase ten water-lots, east of Holland street, for the sum of $5, and also on condition that such company shall, within one year, erect a breakwater in front of said lots, under the direction of city councils, and shall also, within two years, erect a good and substantial bloomery thereon, or within the limits of the city, and continue the occupancy of the said lots for the purposes aforesaid, and shall also be subject to the same ordinances and regulations required of purchasers of water-lots heretofore sold.

The Sharon Iron Company, in pursuance of this resolution, purchased at public auction, on the 1st May 1852, the ten water-lots above mentioned, and which are the subject of this ejectment, for the sum of $5 each; and on the third of the same

month the Select and Common Councils of the city of Erie resolved that the sale of said water-lots to the Sharon Iron Company be, and the same is hereby approved and confirmed, and that a deed of conveyance be made out and executed, and delivered to the said company for the said water-lots, according to law and the resolutions of city councils, passed September 1st last.

On the 8th of June 1852 the mayor and council of the city of Erie, by indenture of that date, granted and conveyed the said ten water-lots to the President, Directors, and Company of the Sharon Iron Company, their successors and assigns for ever. This conveyance, however, is expressly made subject *inter alia* to the conditions, provisions, and stipulations of the resolution aforesaid of the city councils, passed the 1st day of September, A. D. 1851.

In this resolution, thus incorporated into the conveyance from the city to the company, there are two conditions:—

1. That the company shall, within one year, erect a breakwater in front of said lots, under the direction of the city councils. This condition has been complied with, and the construction of the breakwater, and the piering and improving the inshore lots cost the company from $16,000 to $17,000. This disposes of the first condition.

2. "And shall also within two years erect a good and substantial bloomery thereon, or within the limits of the city." I omit the words following this condition, "and continue the occupancy of the said lots for the purposes aforesaid," because upon them the court below expressed no opinion, and they have really no bearing upon the question whether, *this* second condition not having been complied with, the plaintiffs are entitled to recover back the land for a breach of it. The Sharon Iron Company did not within two years erect a good and substantial bloomery on these lots, nor within the limits of the city. But upon the petition of the agent of the Sharon Iron Company, the Select and Common Councils of the city of Erie, on the 10th July 1854, passed the following preamble and resolution:—"Whereas, the Sharon Iron Company, by virtue of a resolution passed by the Select and Common Councils of the city of Erie, September 1st 1851, purchased of said city ten water-lots, east of Holland street, on certain conditions specified in said resolution, one of which conditions being 'that the said company shall in two years erect a good and substantial bloomery thereon, or within the limits of the city;' and whereas, it is now thought, on account of the result of more recent experiments, that the interest of the company will be best promoted by the use of a 'blast furnace' instead of a 'bloomery,' while the change will be equally if not more advantageous to the city; therefore, Be it resolved by the Select and

[Sharon Iron Co. *v.* City of Erie.]

Common Councils, That the Sharon Iron Company be permitted to erect a good and substantial 'blast furnace' on their water-lots, or within the limits of the city, instead of a bloomery, as required by the resolution aforesaid, above referred to, and further, that the time for the construction of said works be extended until 1st November 1855."

The blast furnace never was built, the company failed, and the property in question has passed into other hands. The clause in the original resolution incorporated into the deed was a condition, not a covenant, and "where the language imports a condition merely, and there are no words importing an agreement, it cannot be enforced as a covenant, but the only remedy is through a forfeiture of the estate." "But upon principle," says Selden, J., delivering the opinion of the Court of Appeals in Palmer *v.* Fort Plain and Cooperstown Plank-Road Company, 1 Keenan 389, "independent of all authority, it would seem impossible to come to any other conclusion. It by no means follows, because a grantee consents to take an estate subject to a certain condition, that he also consents to obligate himself personally for the performance of the condition. Many cases might be imagined in which one would be willing to risk the forfeiture of the estate, while he would be altogether unwilling to incur the hazard of a personal responsibility in addition." Now, this clearly was a condition only, and was broken at the end of the two years, and the city of Erie might have taken advantage of it and re-entered upon these premises; but instead of doing this, they dispensed with the condition and waived the forfeiture, permitting their grantees to do something else. The original condition is therefore gone, and, as a condition, is as if it had never made a part of the original conveyance. This is clear law, and although Dumpor's Case, 4 Coke's Rep. 119, was quarrelled with by Sir James Mansfield, it was the undoubted law of England until altered by a late Act of Parliament (22 & 23 Victoria, ch. 35), and has been recognised in this state, New York, and other states of the Union. Chancellor Walworth, in Williams *v.* Dakin, 22 Wend. 209, in speaking of this case, says: "But although that decision has so long been acquiesced in as a settled rule of law, in relation to the title to real property which was liable to be forfeited by the breach of a condition subsequent, that it should not now be disturbed, it ought not to be extended to other cases. That decision proceeded upon the principle that where an estate is granted upon a *condition* subsequent, if the condition is once dispensed with the estate becomes absolute in the grantee, and cannot be divested by any future breach."

The doctrine that a forfeiture may be waived by the party who has the right to avail himself of the breach of a condition, and that he may do this by acts as well as by express agreement, is

[Sharon Iron Co. *v.* City of Erie.]

a familiar one, and was strongly exemplified in the case of Ludlow *v.* New York and Harlem Railroad, 12 Barbour 440.   There the grant was of land in fee simple to a railroad company, upon condition that the road should be completed by a certain time, which was not done; and after that the grantor, knowing the fact, suffered the company to go on and incur expenses in constructing their road, and made no objection, and it was held to be a waiver of the condition and forfeiture.

Whether the rule in Dumpor's Case, as said in two Missouri cases, cited in 2 American Leading Cases 629, "under which conditions once waived are wholly gone," is restricted to grants of land and incorporeal hereditaments, and forms no part of the general law of contracts, I shall not stop to consider, for the case before us is that of a condition annexed to a grant of land in fee simple, expressly dispensed with and waived by the grantors.

The case presented to us is really a dry question of law, depending upon principles settled three centuries ago, and which in the present instance inflict no injury upon the plaintiffs, who have secured a permanent improvement on their waterfront, and lost a fancied benefit, which if even put into operation must have perished in these times, unless another change had been made and the bloomery and the blast furnace had taken the shape of a cannon foundry.

The court below were, therefore, in error in entering judgment on the special verdict in favour of the plaintiff.

> Judgment reversed, and judgment for the defendants on the special verdict.