# APRIL TERM, 1919.

WINDEMERE-GRAND IMPROVEMENT & PROTECTIVE ASS'N
*v.* AMERICAN STATE BANK OF HIGHLAND PARK.

1. EQUITY — JURISDICTION — ENFORCEMENT OF BUILDING RESTRIC-
TIONS.
    The right and duty of a chancery court to enforce restric-
    tions in a deed under its equitable jurisdiction is not
    absolute, but in the exercise of such jurisdiction the same
    general equitable considerations and rules are recognized
    as move the court in cases for specific performance of
    contracts.

2. SAME — BUILDING RESTRICTIONS — RESIDENTIAL PURPOSES —
CHANGED CONDITIONS.
    The equity court will not enforce the provisions in a deed
    restricting the use of the premises to residential pur-
    poses, where, since the dedication of the plat, the char-
    acter of the locality has changed from a residential to a
    business section, and adjoining lots, originally containing
    the same restrictions, have been freed therefrom, and are
    now used for business purposes.

Appeal from Wayne; Dingeman, J. Submitted Feb-
ruary 6, 1919. (Docket No. 106.) Decided May 2,
1919.

Bill by the Windemere-Grand Improvement and Pro-
tective Association against the American State Bank
of Highland Park and another to enjoin the violation
of building restrictions. From a decree dismissing the
bill, plaintiff appeals. Affirmed.

*Roscoe C. Griffith,* for plaintiff.

*J. Walter Dohany* and *Dohany & Dohany,* for de-
fendant bank.

(539)

STEERE, J. Plaintiff's bill of complaint was filed to enjoin construction by the defendant bank of a one-story reinforced concrete and stone bank building in alleged violation of certain building restrictions on lot 4 of Curry's subdivision of Pallister's subdivision of part of quarter section 4, 10,000-acre tract, in the village of Highland Park, Michigan. From a decree of the Wayne county circuit court in chancery dismissing said bill plaintiff has appealed, relying largely for reversal on *Moore* v. *Curry*, 176 Mich. 456, where the restrictions in this same subdivision were involved, reference to which may be made for a general understanding of the situation and comparatively recent developments in the locality up to that time.

Curry's subdivision contains 312 lots, of which lots 1 to 12 inclusive are situated on the east side of Woodward avenue, lot 4 being at the northeast corner of Woodward and Windemere avenues, facing Woodward with its southerly side along the north side of Windemere, which extends east in the subdivision between Woodward and Oakland avenues. The lot is 53.92 feet in width fronting on Woodward, and 150 feet in depth with a 20-foot north and south alley at its rear, east of which the lots front on Windemere.

Lot 4 was deeded by Curry, one of the original platters of the subdivision, to John D. Taylor on June 14, 1906. This deed contained substantially the same restrictions relative to residence purposes, etc., set out in *Moore* v. *Curry*, *supra*, authorizing, however, the erection of two dwellings on the lot, one on the front, "not less than 35 feet from the front line," to cost at least $3,500, and one on the rear, "not less than 10 feet back from the street line," to cost at least $2,500. Taylor conveyed the lot to one Burns by a deed containing those restrictions; Burns to one Blanck by a deed in regular form without the restrictions; Blanck and wife to the defendant Welt Company by conveyance without the restrictions and the Welt Company

sold to the defendant bank by a land contract without the restrictive clause. All of these conveyances describe the property as lot number 4 of said subdivision according to the recorded plat thereof, giving liber and page. Upon the face of the original plat appears a blue line extending along and just north of the north line of Windemere avenue to Woodward including lot 4, on which is written, "building line 22 feet from street line." It may be noted that the legal significance of this blue line was particularly urged for plaintiff in view of the issue developed on the hearing, it being then conceded, and testified by plaintiff's witnesses, that Woodward avenue had become strictly a business street and there was no objection to the proposed building if kept north of this line. Plaintiff's president testified of its character in part:

"We felt it was a business street and ought to be built up. * * * I want to see the business there. * * * This property, I understand, is worth over $700 a foot. * * * We don't imagine it for a residence at all."

Asked by the court, "What is the objection to this building?" he replied:

"There is no objection to it, * * * It is the objection to bottling up Windemere Avenue with property that they did not purchase for building purposes, that is the way that we have argued it up there."

Of this issue, defendant's counsel said: "As I understand it, the real contention is where the south line of this business block should be located"; to which plaintiff's counsel replied: "That is it."

The question of enforceable building restrictions has so frequently been before this court and discussed in its various aspects that further discussion of the settled rules would be but repetition. The urged limitation on equitable jurisdiction to enforce restrictive building covenants not found to have been affirma-

tively shown in *Moore* v. *Curry, supra,* is conceded to exist here. There complainant sought to restrain the palpable violation of a restrictive covenant prohibiting the erection of a proposed business block upon which defendants had started work in a small way to test the attitude of residents in the district towards such an invasion. The only possible defense against the injunction suit which followed was that equity ought not to enforce the restriction because conditions had changed since the property was platted, and Woodward avenue had become an important and strictly business street. This was strenuously denied by plaintiff and found by the trial court not affirmatively shown after hearing witnesses and verifying their testimony by a personal inspection of the locality. On the record there made this court found no impelling reasons to disturb the conclusions reached by the trial court and affirmed the decree, without, however, foreclosing the privilege of "bringing to the attention of the court any marked change in the conditions of the property in the future." Here the changed conditions there contended for and denied are conceded as to Woodward avenue and this lot, which it is admitted only can and should be devoted to business purposes. The restriction to residential purposes is not only waived, but we are told by plaintiff's president that it is "felt" that Woodward avenue as a business street ought to be building up and the desire is to see business built up there, plaintiff's only claim being a qualified right to dictate on what portion of lot 4 the building, to which in itself there is no objection, shall be built.

The various conveyances of this lot describe it as "lot numbered four, on the east side of Woodward avenue, in Curry's subdivision (etc.), as recorded September 11, 1905, in liber 24 of plats, page 19, Wayne county records." It is contended for plaintiff that such reference to the plat in the deeds makes it a

part thereof as completely as delineating it in the instruments would do, and therefore the blue line with the notation was a building restriction running with the land and binding on all grantees taking under such description. The general rule as to the significance of reference in a deed to a plat in aid of description is of doubtful application for support of the claimed exacted covenant, or imposed restriction upon the use of lot 4, under the facts shown here. This plat is without restrictions or limitations of any kind, except what may be inferable from the blue line and memorandum as to building limit in connection with it. If the general plan of limitations and restrictions for residence purposes, shown to have been adopted in subsequent conveyances, had been fully declared and properly delineated in the plat as a general plan of imposed restrictions on the subdivision, and by apt reference to the restrictions therein they had been made part of the covenants in the deed, as a condition annexed to the grant, the rule invoked would be nearer in point. As this property was platted lot 4 and adjacent lots along the east side of Woodward avenue fronted on that street, extending back 150 feet to a north and south 20-foot alley, beyond which the directions of the width and length of the lots was changed and they were fronted on Windemere avenue, running back north to an east and west alley. It is fairly inferable from what appears on the plat itself that the blue line running along the north side of Windemere avenue was put there with particular reference to lots fronting on that street, and such seems clearly indicated by the deed of lot 4, fronting on Woodward, soon thereafter given by the platter to Taylor. It is admitted in the record that the deed from the platter for each lot "describes only that particular lot, and also names the restrictions on that lot, and has no reference to any other lot in the subdivision." No reference is

made in the deed to a purchaser of any other lot to any restrictions on lot 4. The restrictions in the deed of lot 4 to Taylor make no mention of a 22-foot building line on Windemere, and as to that street expressly permit the building of a $2,500 residence on the rear of the lot within 10 feet of the street line, specifying a different building line for the front on Woodward avenue, which impliedly negatives the claimed inference from the blue line on the map of an intention to apply it to lot 4.

If conditions had continued as anticipated when this subdivision was platted and Highland Park remained a quiet village of suburban homes the owner of lot 4 had the right under the residential restrictions imposed upon it to "bottle up" Windemere avenue and cut off the view towards Woodward to within 10 feet of the Windemere line, by the erection of two wooden dwellings at a total cost of $6,000. Under the conceded changed conditions the proposed expensive and attractive bank building only cuts off 8 feet more of the view from Windemere. This building is clearly shown to be a legitimate step in furtherance of building up Woodward avenue in that locality as a business street in harmony with what plaintiff's president states is generally felt should be done. It is designed solely for a banking building, to be devoted exclusively to the increasing business of the defendant bank, which has outgrown the capacity of its rented quarters in Highland Park at the corner of Woodward and Cottage Grove avenues, where it has been located for between three and four years. To adequately and appropriately meet the demands of its banking business, this structure as planned and to be built, will be 60 feet in depth with a frontage of about 52 feet on Woodward avenue, its north side at the north line of lot 4 and its southerly side 2 feet north of its south line along Windemere. It is called a classical design, the

exterior of white cut stone and ornamental work with large fluted column pilasters, "classical corners," and large Roman arch windows, the design to be carried out on the Windemere side of the building also, in which will be four of the arch windows. It is not questioned that such a building is warranted under developed business conditions in that locality, and experienced real estate dealers testify the legitimate demand for business locations along Woodward avenue in that vicinity is such that the frontage of lot 4 is worth at a fair market value for business purposes $850 per foot, that it has no market value for residence purposes and no residences have been built in Highland Park on that street within the past six or seven years. Plaintiff's president, in explaining how certain lots in close proximity on the same side of Woodward avenue had been "lifted out" of the restrictions by consent of the association, said: "We realized that this property was absolutely worth nothing except for business purposes." This admission suggests as well in point the proposition that equitable jurisdiction of chancery courts to enforce restrictive covenants made in evident reference to a continuance of then existing and anticipated demand for quiet suburban homes, will not as a rule be exercised to compel observance of a residential restriction, which when imposed had in view use for dwelling purposes only of property which subsequently by unanticipated development and advance of business became, from changed conditions, strictly business property and no longer of use or value for the purpose to which it was restricted. 2 Devlin on Real Estate (3d Ed.), § 991c; Berry on Restrictions, § 403.

That there has been a marked change of conditions in that locality, especially in the character of Woodward avenue, from those shown as existing when *Moore* v. *Curry, supra,* was tried is admitted by plain-

tiff and emphasized by the testimony of its own witnesses. They testify that in 1905 when this subdivision was platted it was "a country section," since which time Detroit has so developed and solidly grown to the northward that it now entirely surrounds Highland Park until it is impossible for the latter "to expand any further"; that "there has been a vast growth of manufacturing and business institutions out there, and Woodward avenue has greatly changed its character since 1913—nearly all of the business places there have been built since 1911"; all Woodward avenue in that vicinity being "an exceptionally noisy, busy street and is growing more and more so every day"; the lots fronting upon it being valuable only for business purposes and past imagining for a residence; nor has a dwelling facing Woodward avenue ever been built on any of the lots in that subdivision.

Plaintiff's attitude is shown to have been in various instances actively repugnant to maintaining Woodward avenue within the limits of this subdivision for residence purposes only according to the general plan adopted by the platter for its improvement and development now invoked, and has in its capacity as an improvement association contributed helpfully to developing that part of Woodward avenue as a business street by agreement with owners of certain lots in the subdivision fronting Woodward, upon which it was proposed to erect business blocks, that they "should be lifted out of the restrictions." Lots 5, 6 and 7 in the subdivision, immediately north of the lot in question here, were thus emancipated by plaintiff. In some instances resort was had to the chancery court for ratification of the project through injunction proceedings, ostensibly instituted by plaintiff to enforce the restrictions and contested by the lot owner on the ground of changed conditions similar to those urged here by defendant, resulting in admittedly consent

decrees agreeable to previous agreements or under-
standings that such lots should be lifted out of the
restrictions, with a provision in each decree that it
should not operate as a waiver by plaintiff "or any
other persons interested," as to other lots in the sub-
division.   They certainly would not operate as a
waiver by any other person not a party to the pro-
ceeding, but it may well be questioned how long the
courts are open to plaintiff in its improvement and
protective activities for negative and affirmative ac-
tion on a program of selective lifting of limitations
on a street where it has by prior participation, in so
practical and positive a manner, committed itself to
the proposition of unquestioned changed conditions;
and necessarily changed conditions of a kind not with-
in contemplation of the parties when the limitations
were imposed, which have so frustrated the general
scheme then devised for use of the subdivision, so
far as Woodward avenue is concerned, as to entirely
defeat the object of the restrictive covenants, and in
various unanticipated ways materially affected the pos-
sible use and values of property fronting on that thor-
oughfare.   With these changed conditions conclusively
shown and conceded as to that street as it extends
through the subdivision, the building and business
limitations as to lots fronting on it become obsolete.
It is here urged that a single and disputed feature of
these residential restrictions should now be enforced
against this lot as a matter of right in a court of
equity on the strength of this questionable blue line.

The object and scope of the limitations in the deed
to defendants' grantors was in furtherance of a scheme
by the platters of the subdivision to exclude all trade
or business, and restrict its use to residential pur-
poses with only a restricted kind and number of
dwellings built upon it.   Concededly the servient estate
on this lot is in effect and for practical purposes de-

stroyed by the changed conditions which now make it unfit and worthless for such use. In *Sharon Iron Co.* v. *City of Erie*, 41 Pa. St. 341, it is said:

"A condition that destroys an estate is to be taken strictly, and it is established law that a condition once dispensed with, in the whole, or in part, is dispensed with forever, and as to all the land, for a condition is entire, and cannot be apportioned except by act of law."

The right and duty of a chancery court to enforce restrictions under its equitable jurisdiction is not absolute. In the exercise of such jurisdiction the same general equitable considerations and rules are recognized as move the court in passing upon applications to compel specific performance of contracts. Certainly no decree of this court can retain or restore the quiet suburban conditions existing and contemplated when those residential restrictions were imposed. It cannot eliminate the "vast growth of manufacturing and business institutions out there," and invasion of traffic which has made "all Woodward avenue in that vicinity" an exceptionally noisy and busy street. This unforeseen and radical change in condition and character of the street has defeated the object and purpose of the restrictive covenants upon this lot, which had relations to protecting the home, or dwelling house, and equity does not now, under the concessions and facts shown, demand that defendant be enjoined from improving and using as proposed this lot thus made worthless for residential purposes.

The decree dismissing plaintiff's bill of complaint is affirmed, with costs.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.