**JOHNSON et al. v. POTEET et al. (No. 9672.)\***

(Court of Civil Appeals of Texas. Dallas. Nov. 21, 1925. Rehearing Denied Jan. 26, 1926. Second Motion Overruled Feb. 6, 1926.)

**1. Appeal and error ⬤⟳745—Appellants held not required to file assignments of error in trial court.**

Where conclusions of fact and law were filed after final judgment was rendered, appellants were not required to file assignments of error in trial court, but could present them in their brief filed in Court of Civil Appeals.

**2. Injunction ⬤⟳62(3)—Covenant to use lots for residences not enforced, where garage erected on adjoining lot.**

Where lots restricted to residential purposes became valueless as residential property when grantors sold adjoining lots with no restrictions, and garage was built thereon, and use for business purposes would not appreciably add to injury to other lots, *held* covenant should not be enforced by injunction.

**3. Injunction ⬤⟳128—Evidence held sufficient to show property not desirable for residential purposes.**

In suit to enjoin erection of business house on certain lots, in violation of covenant, evidence *held* sufficient to show that such property, through no fault of owner, but because of condition, character, and use of adjacent property, brought about by act of grantors, had been materially injured, if not rendered valueless, as residential property.

On Motion for Rehearing.

**4. Injunction ⬤⟳123—Issue as to grantors' consent to use of lots allowed inquiry as to condonation by other grantees.**

Where, in suit to enjoin erection of business house on certain lots, in violation of covenant, issue was raised as to whether common grantors consented to use of other lots in addition for purposes other than residences, wide field was opened for inquiry as to whether plaintiffs had condoned violation of covenants.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Suit by J. P. Poteet and others against W. S. Johnson and another. From a decree for plaintiffs, defendants appeal. Reversed and rendered.

Thomas, Frank, Milam & Touchstone and Pierson & Pierson, all of Dallas, for appellants.

Spence, Smithdeal, Shook & Spence, of Dallas, for appellees.

LOONEY, J. This appeal is from a decree in favor of the appellees perpetually enjoining W. B. Johnson, owner, and Arthur Garwick, contractor, from erecting a business house on certain lots of land owned by John-son in the second installment of University Annex, an addition to the city of Dallas.

[1] At the outset appellees insist that the court should not consider appellants' assignments of error, because they were not filed in the trial court and brought up as a part of the transcript.

The record shows that final judgment was rendered in this cause on August 26, 1925, and that the court's conclusions of fact and of law were not filed until on the 15th day of September, following. In this situation, appellants were not required to file their assignments in the trial court, but were clearly within their rights in presenting them as they have done in their brief filed in this court. Busbee v. Busbee (Tex. Civ. App.) 231 S. W. 441.

Appellees, plaintiffs below, alleged that they and appellants Johnson owned lots in the addition just named, holding under deed from G. W. Weibusch and Nathan Powell, common grantors; that, in the deed under which all parties claim, there were placed certain provisions restricting the use of the lots to residential purposes only, and excluding their use for business or commercial purposes; that these restrictions were imposed in pursuance of and under a general scheme and plan to create an exclusive residential district; that the same constituted covenants running with the land; that the deed records of Dallas county fully and completely disclosed this general plan and scheme, and that Johnson had both actual and constructive knowledge of the same at the time he acquired title to the lots owned by him, and that he took title with the obligation to comply with these restrictions; that these covenants were intended for the benefit, not only of the common grantors, but for all purchasers of lots in said addition, and that the plaintiffs purchased their lots with reference to and in reliance upon said scheme and plan, and are entitled to enforce the same as against appellants; that, with full knowledge of these facts, appellants, on August 5, 1925, began the erection of store buildings to be used for commercial purposes on the lots owned by Johnson, being lots 1 and 2, and 7½ feet off of the south side of lot 3, in block A, of said addition, and that, unless restrained by the courts, they will complete said buildings in violation of the covenants, with the result that the general scheme and plan for a restricted residential district will be destroyed; that the same will rapidly become a commercial section, occupied by stores and other commercial enterprises, to the irreparable injury and damage of appellees.

In the answer of appellants a number of special defenses were urged, only one of which will be noticed; that is, to this effect, that owing to the use of the contiguous property in said addition for business and commercial purposes, the land of appellant John-

son has become unsuited for residence purposes and is now valuable only for business or commercial uses, and that under these changed conditions it would be inequitable to enjoin the use of the land for business purposes, and to do so would render it worthless.

The facts that we deem material for our consideration are that on January 7, 1911, the Country Home Realty Company conveyed to G. W. Weibusch 19 acres of land, containing certain restrictions regulating the cost and location of residences to be erected therein, but containing no prohibition against the use of the land for business or commercial purposes. Subsequently Weibusch conveyed to Nathan Powell an undivided one-half interest in the land, and in November, 1912, the same was platted by them into blocks, lots, streets, and alleys, and the plat was recorded in the county clerk's office of Dallas county and designated as University Annex addition, second installment. In order to widen one or more of the streets, and before any of the lots in the addition were sold, except lots 5 and 6 in block A, then owned by Rice R. Jackson, they replatted the property, being joined therein by Jackson, and this plat was recorded in the county clerk's office of Dallas county on April 7, 1920. It appears that Weibusch and Powell agreed between themselves to make the addition a restricted residential district, and, to this end, all deeds executed by them conveying lots in the addition, some 40 or more in number, except lots specifically mentioned below and probably a few others, contained restrictions limiting the use of the property for private dwellings and necessary outhouses and regulating the location and cost of same.

Owing to the inconvenience to people out there having to go to Highland Park to trade, they exempted from the plan and scheme, for business purposes, lots 5 and 6 in block A, owned by Jackson at the time the last plat was recorded, and later it appears that they conveyed to Jackson lot 4 and substantially all of lot 3 in said block, also without restriction as to use for business purposes. Thus the lots owned by Jackson, to wit, 6, 5, 4, and the major portion of 3 in said block, were by the grantors released from the restriction against their use for business or commercial purposes and, accordingly, business houses have been erected thereon in which businesses are now being conducted, including a drug store, grocery stores, and a public garage, the garage located on lot No. 3 immediately north and substantially on the property line dividing Jackson's property from that of appellant Johnson.

We fail to find in either plat of the addition that was recorded, or in any deed or other document executed by the common grantors, or by any of the parties, any evidence in writing of their intention to make of this addition a residential district, or of any general or uniform plan or scheme of development, or that the restrictive covenant contained in the deeds were for the benefit of all purchasers of lots in said addition. The evidence on these points is furnished by the testimony of Powell that he and Weibusch agreed and intended to make the addition a residential district; that the deeds executed by them to purchasers (with the exceptions noted) contained similar restrictions limiting the use of the property to residential purposes, and that a statement to this effect was made to each purchaser when lots were sold, and also certain hearsay, extant in the neighborhood, was admitted in evidence to the effect that the addition was reputed to be restricted to residence only.

It appears that block A, in which the land of appellant Johnson is located, is composed of 28 lots. Lots 1 to 6, inclusive, constitute the east side of said block and face east on Hillcrest avenue. This group of lots extends from Asbury avenue on the south through the block to Roberts on the north, and extends west 155 feet to a 16-foot alley that runs through the block from north to south and completely separates the group of lots, 1 to 6, above mentioned, from the other lots in the block. Eleven of these lots face north on Roberts, and 11 face south on Asbury avenue. Thus we have the situation; The 6 lots now owned by Jackson and appellant Johnson constituting the east side of block A facing east on Hillcrest avenue, completely segregated from the remaining portion of the block by a 16-foot alley on the west, and, of the other lots, 11 face north on Roberts, and 11 face south on Asbury.

Appellant Johnson claims title under a deed from the common grantors to J. Leonard Rea, dated May 17, 1920, containing several restrictions or covenants, among others the following:

(2) "Only private dwelling and necessary outhouses shall be erected and the private dwelling shall be two full stories in height, and shall be built of concrete and stucco, brick and hollow tile, or brick veneer, and shall not be nearer than 40 feet to the front property line, and such dwelling shall face the street on which the lot faces and according to the plat of record."

The only defeasance clause contained in said instrument is a condition subsequent in favor of the grantors, their heirs and assigns, as follows:

"The violation of any of the stipulations within a period of 25 years shall cause the property herein conveyed to revert to sellers, their heirs or assigns."

On January 16, 1922, the common grantors conveyed to R. R. Jackson 1 to 4 and all of lot 3 in block A, except a strip 7½ feet wide on the south side of lot 3, without restriction as to their use.

This court, in the recent case of Pierson v. Canfield, reported in 272 S. W. 231, had oc-

casion to express its views as to the nature and character of evidence necessary to establish a uniform settlement and building scheme, mutually binding on grantors and all purchasers as well, such as is here under consideration, and also as to the right of others than the grantors, his heirs and assigns, to enforce restrictive covenants such as are involved in this controversy. We adhere to the views there expressed; but, for the reason that these questions are not directly presented to us for decision in any assignment of error, we express no opinion (a) as to the sufficiency of the evidence to show the existence, whether or not, of a general scheme constituting the addition in question a residential district, nor, (b) as to the right of appellees to enforce the restrictive covenants contained in the deed under which appellant Johnson claims title.

[2] Assuming, however, but not deciding, that appellees sufficiently established the existence of such a general scheme for building up the addition and restricting the use of lots therein to residential purposes only, and that these restrictions were made for the benefit of all purchasers of lots in the addition and constitute covenants running with the land, still we are confronted with this question; that is, in view of the fact that the restrictive covenants as to the land of appellant Johnson were designed to preserve its value for residential purposes, and since this has been defeated by the action of the common grantors, acquiesced in by all cocovenantees, should a court of equity prevent him from using the property for business or commercial purposes?

It appears that subsequent to the conveyance by the common grantors to Leonard R. Rea, under whom appellant Johnson claims, they conveyed lots 4 and the major part of lot 3 in block A to R. R. Jackson without restriction as to its use for business or commercial purposes. Jackson at that time owned lots 5 and 6, and on this series of lots, 6, 5, 4, and the major portion of 3, there have been created business houses in which are maintained businesses of different kinds, including a public garage located immediately north and adjoining the property line of appellant Johnson.

[3] The trial court made no finding on the question as to the effect produced on the land of Johnson by the erection and operation of a public garage on lots 3 and 4; that is, as to whether the change in the character, use, and condition of these lots rendered the restrictions in the deed under which Johnson claims functus and inapplicable according to the intent, spirit, and purpose of the same. The evidence on this point, however, is without conflict and shows that the use by Jackson of lots 3 and 4 immediately north of and adjoining the property owned by Johnson for a public garage has rendered his property unattractive for residences and has materially injured, if not wholly destroyed, its value for such purpose.

Mr. Poteet, one of the plaintiffs, said:

"I don't think a lot next to a garage would be desirable for residence property."

Mr. Bennett, one of the plaintiffs, said:

"I do not appreciate the garage being there, but I could not help myself."

Neither of the plaintiffs Cozzoldi, Hatchell, or Elmore, testified on this point. The plaintiff Hilt was not a witness. Nathan Powell, one of the common grantors and a witness for appellees, testified as follows:

"I would not build a residence there next to that garage on this property in question, I would not sell a lot to a friend of mine next to a garage for residence purposes without telling him about it. It would not be desirable for a residence."

Appellant Johnson, in his own behalf, testified as follows:

"I know that there is considerable noise from a garage of that character, besides automobiles starting and stopping there for gas. There is a filling station there, which makes it very undesirable for anybody living there. The property next to that garage is not suitable for residence purposes and is suitable for business purposes only. No one could live in comfort next to this garage. If I am not permitted to build a business house on that lot, the result will be a financial loss to me of over $5,000. I cannot see that the lot is of any value as a residence lot. The lot cannot be used for any purpose except as a business lot."

Appellant Carwick testified as follows:

"I am familiar with the property out there. I have had experience in building stores and business houses and residences over the city. There is a public garage out there right next to the Johnson property and a filling station there. I would not take the lot next to that garage for the paving charges against it for residence purposes. A residence could be built there, but it is not a desirable location for a residence next to a garage. All the rest of the houses above there are business houses. The property there where this building is started I cannot imagine anybody that would want it as residence property because it is next to a business house."

This testimony shows that the property owned by appellant Johnson, by reason of no fault on his part, but because of changes in condition, character, and use of the adjacent property, brought about by the affirmative action of the grantors, and the acquiescence of appellees and other owners of lots in the addition, has been materially injured, if not rendered valueless, as residential property.

If Johnson is prohibited from using his property for business or commercial purposes, he will necessarily suffer a damage greatly in excess of any which is likely or possible for appellees to sustain by reason of the erection by him of business houses on his land.

In fact, the filling out of that side of the block with business houses, as appellant Johnson was proceeding to do when enjoined, will not appreciably add to the injury sustained by appellees incident to the erection by Jackson of the garage on lots 3 and 4.

The Supreme Court of Pennsylvania, in the case of Sharon Iron Co. v. City of Erie, 41 Pa. 341, dealing with the effect of dispensing with conditions, said:

"A condition that destroys an estate is to be taken strictly; and it is established law that a condition once dispensed with, in whole or in part, is dispensed with forever, and as to all the land, for a condition is entire, and cannot be apportioned except by act of law."

The change that has been wrought in the character and use of the lots adjoining those belonging to appellant defeated the object and purpose of the restrictive covenant as to his property, and it is now impossible to restore the status quo by any decree a court might render.

The Supreme Court of Michigan, in Windemere, etc., Ass'n v. American State Bank, 205 Mich. 539, 172 N. W. 29, in the course of a discussion of this subject said:

"The right and duty of a chancery court to enforce restrictions under its equitable jurisdiction is not absolute. In the exercise of such jurisdiction the same general equitable considerations and rules are recognized as move the court in passing upon applications to compel specific performance of contracts. Certainly no decree of this court can retain or restore the quiet suburban conditions existing and contemplated when those residential restrictions were imposed. * * * This unforeseen and radical change in condition and character of the street has defeated the object and purpose of the restrictive covenants upon this lot, which had relation to protecting the home or dwelling house, and equity does not now, under the concessions and facts shown, demand that defendant be enjoined from improving and using as proposed this lot thus made worthless for residential purposes."

Also see Bryant v. Whitney, 178 Cal. 640, 174 P. 32.

The same doctrine is announced in Pomeroy's Equity (3d Ed.) at page 2596, as follows:

"The equitable jurisdiction to enforce such covenants is subject to one most important limitation. It is not absolute, but is governed by the same general rules which control the equitable relief of specific performance of contracts. If, therefore, the restrictive covenants in deeds of lots were made with evident reference to the continuance of the existing general condition of the property and its surroundings but in the lapse of time there has been a complete change in the character of the neighborhood, so as to defeat the purposes of the covenants and to render their enforcement an inequitable and unjust burden on the owner of the lots, then the equitable relief will not be granted, and the plaintiff will be left to his remedy at law. For example, if the covenants restricted the grantees of lots to use for purposes of residence, and since their execution the whole neighborhood had ceased to be used for such purposes and had been wholly given up to business, manufacturing, and the like." Clifton George Co. v. Great Southern, etc., Co. (Tex. Civ. App.) 234 S. W. 705; Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741, 28 Am. St. Rep. 584; Star Brewery Co. v. Primas, 163 Ill. 652, 45 N. E. 145; Ewertsen v. Gerstenberg, 186 Ill. 344, 57 N. E. 1051, 51 L. R. A. 310.

In the light of the doctrine announced in these authorities, and in view of the undisputed facts of the case, we have reached the conclusion that equity does not demand that Johnson be prohibited from improving and using his land for business purposes.

Therefore the permanent injunction decreed by the trial court will be dissolved.

Reversed and rendered.

On Motion for Rehearing.

In their motion for rehearing appellees insist that this court erred in the statement to the effect that appellants urged as a special defense that the use of contiguous property in the addition for business or commercial purposes was "by and with the consent of the common grantors and the acquiescence of appellees and other owners of lots similarly situated in the addition." Their contention is that no pleading was filed by appellants alleging that appellees had acquiesced in the use of contiguous property for business or commercial purposes.

A careful re-examination of the answer of appellants justifies this criticism, and reveals the fact that the language used in our opinion, to wit, "by and with the consent of the common grantors and the acquiescence of appellees and other owners of lots similarly situated in said addition," was not authorized by any allegation in appellants' answer. The writer of the opinion confused statements in appellants' brief with the allegations of their answer.

[4] However that may be, appellees themselves alleged that the common grantors of the parties inserted identical covenants in all deeds to lots sold in the addition, restricting the use of same to residential purposes. These allegations were denied by appellants, thus raising the issue as to whether or not the common grantors consented to a use of any of the lots for purposes other than residential. The suit being a proceeding in equity for injunctive relief, a wide field was opened for inquiry whether, and to what extent, appellees had condoned the violation of these covenants or had acquiesced in the use of lots in the addition for commercial or business purposes.

We do not regard the matter objected to as of any materiality, but, for the sake of accuracy, the opinion will be corrected by eliminating from our statement the language quoted above.

After a careful consideration of the motion for rehearing, we find no reason to change our original decision; hence the motion is overruled.