259 P.2d 1025

**NEFF et al. v. HENDRICKS et al.**

No. 5601.

Supreme Court of New Mexico.

Aug. 6, 1953.

George A. Shipley and Allan D. Walker, Alamogordo, for appellants.

Garland, Sanders & Cooney, Las Cruces, for appellees.

COMPTON, Justice.

Appellees seek to restrain appellants from engaging in business in an area originally designated as Cloudcroft or Place Cloudcroft, now a part of the Village of Cloudcroft. The question presented is whether the premises involved are encumbered by reciprocal negative easement imposed by the dedicator, the Cloudcroft Company, as a common vendor for the benefit of itself and all purchasers of lots and blocks within the area, and if so, have the various owners been divested of the right to enforce the restrictions by reason of waiver or changed condition.

The complaint alleges that the Hendricks are the owners of Block 1 of the restricted area, and the Lanes, their tenants, are now using the same for business purposes in violation of the restrictions imposed. The answer admits the use of the premises by appellants. Further answering, appellants assert that Block 1, the premises involved, was excepted from the general plan of development by the dedicator; if not, restrictions have been abandoned or waived by acquiescence. They also assert that changed condition in the neighborhood is such that restrictions are no longer of value to the area.

In 1900 the dedicator, as a part of a general plan to develop a summer resort in the Sacremento Mountains, designated an area known as Cloudcroft. The area was later to be governed by a board of directors, or directory. Many of its inhabitants frequented the area in summer only, others the year around. The principal inducement to visit the area as well as to establish homes therein was to find a place of quiet, where children could play unmolested, free

from the hazards attending busy commercial districts. From the beginning the restrictive provisions have either been observed or enforced.

In furtherance of the plan, the dedicator caused to be incorporated in its articles of incorporation and each and every original deed of conveyance given by it, the following words:

"That such premises or any part thereof shall never be used for immoral purposes or for purposes of trade or commerce, boarding houses and hotels excepted."

Whether appellees and other interested owners waived the restrictions was for the trial court to determine. These rights were not waived in the absence of an intention to waive them. Alamogordo Improvement Co. v. Prendergast, 45 N.M. 40, 109 P.2d 254.

The lower court found there had been no waiver or abandonment of the general purpose or plan and that conditions in the neighborhood have not effected a change sufficient to destroy the benefits of the restrictive covenants. It also found Block 1, appellants' property, to be within the restrictive area and that it can be beneficially used for hotel and boarding house purposes.

Turning to the question of waiver, the evidence discloses that a picture show, bowling alley and pool room have been permitted to operate within the area, and that

cigarettes, candy, chewing gum, and cold drinks are dispensed at the bowling alley. The operation of these places and the sale of the articles mentioned are not disputed and form the basis of appellants' assertion that a waiver of restrictive covenants has been effected. We cannot agree with this contention. These things being minor and trivial, do not suggest an intent by the common owner or its assigns to waive the restrictions. Alamogordo Investment Co. v. Prendergast, supra. They merely support the purpose of the general plan, that is, the entertainment and amusement of home owners, their families and visitors.

The directors and property owners as well, have been quite vigilant in their insistence that restrictive covenants be complied with. The testimony of the witness Moore is typical of many other witnesses. In stating his objections to the filling station, he testified:

"Because I believe it is a foot in the door to break down restrictions, the buffer zone consisting of parks and public buildings which we always considered was the protection of our property. It would mean that in the event of such a break down the property would lose its value for me, I would be forced to sell * * *. I would lose not only monetarily, but I would lose a place that I have cherished as a haven for my child, a cool place to go

in the hot weather and a place to grow up, a healthy place."

One of the governing directors, Mr. Pittman, has lived in the restricted area for some thirty-five years. Concerning his interest in the area, he testified:

"Yes, I have done what I suppose all of them do when they observe anyone violating any of the restrictions, they call their attention to it and usually that is sufficient to remove the trouble. I have had a number of instances like that, the keeping of livestock in the trailer court, and a few things like that, that I myself gave notice and they did away with it, and I think other Directors have done the same thing. The Directory has not made any specific ruling in any of these minor operations."

It appears soon after appellants started to construct the filling station, they were notified of possible violations by them. The notice and acknowledgment thereof, read:

"This is to notify you that the building being constructed on the corner of Possum Avenue (New State Highway) and Swallow Place, if used for commercial purposes, will be in violation of the covenants contained in the deeds to the property in Cloudcroft.

"Should such building be used for commercial purposes, a court injunction will be sought against such use.

"The Cloudcroft Directory

"John B. Neff, President

"I acknowledge receipt of the above notice.

"/s/   P. B. Hendricks"

But in spite of all efforts of the dedicator and its assigns to maintain the restrictions, there have been some violations. On one occasion a saloon operated therein for the sale of intoxicating liquors, but it was of short duration and soon padlocked. A stock of merchandise was brought into the area for sale and met a similar fate, as did an attempt to operate a filling station as early as 1926. On the record thus presented we cannot say there has been an intention to waive or to abandon the restrictions.

Appellants assert there has been a change in condition in the neighborhood which renders the restrictions without value to the area. It must be conceded there has been a decided change. In 1910, there were some 140 to 150 residential cottages in the area. Other substantial cottages and modern dwellings have been constructed. It now has all the conveniences of a city, yet is still free of the disturbances so common to business districts. The Southern Pacific has ceased to operate its rail lines in the area. The

Bureau of Public Roads has extended a trans-continental highway into and across it. This highway crosses appellants' property but leaves a sufficient area for the construction of hotels and boarding houses. Obviously, these changes do not lessen the benefits of the restrictions. Rather, they enhance their value. That appellants' property may have become more desirable for business than for residential, boarding house, or hotel purposes, does not defeat appellees' right to equitable relief so long as the dominant property is benefitted by the restrictions. Pagenstecher v. Carlson, 146 App.Div. 738, 131 N.Y.S. 413; Abernathy v. Adoue, Tex.Civ.App., 49 S.W.2d 476; Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132; Miles v. Hollingsworth, 44 Cal.App. 539, 187 P. 167. The evidence is substantial and supports the court's findings. Consequently, the findings will not be disturbed.

There was incorporated in all original deeds of conveyance the following provision:

"* * * and also except that the first party herein reserves the right to manufacture, sell or dispose of intoxicating liquors upon Blocks 1, 2 and 3, as represented on said map, or to authorize or permit other persons so to do * * *"

It is argued that property thus used, is used for trade and commerce. Be that as it may, the question need not be determined since the conveyance to appellants Hendricks contains the same restrictive provisions as all other original conveyances. Hence, their title is similarly burdened.

Error is assigned in the refusal of the court to make certain findings requested by appellants. The refusal cannot be sustained as error since the finding made by the court is supported by substantial evidence.

Finally, appellants challenge an item of cost. Copies of numerous exhibits were attached to appellees' complaint, which were admitted by answer. At the hearing these exhibits were introduced and over objection, admitted in evidence, thereby unduly encumbering the record. Appellants insist the cost of the transcript has been thereby extended in amount of $50 at least. From our examination of the files, the amount seems reasonable. They should be reimbursed accordingly.

The judgment will be affirmed, And It Is So Ordered.

SADLER, C. J., and McGHEE, LUJAN and SEYMOUR, JJ., concur.