## DIPBOYE v. ACCHIONE.

1. ACTION — CLASS SUITS — IMPRACTICABILITY — SUBDIVISION LOT OWNERS.

The impracticability of bringing all owners of 127 lots in subdivision into court by plaintiffs, owners of 5 lots which they sought to relieve of restriction to residence use, was the sort of impracticability which the court rule relative to class suits was designed to relieve, where there was at least 1 who could sue or be sued (Court Rule No 16 [1945]).

2. SAME—CLASS SUITS—SUBDIVISION LOT OWNERS—REPRESENTATION —NOTICE.

The rights of all members of the class, owners of lots in subdivision containing 127 lots, held, adequately represented by developer and subdivider which owned 2 lots and had mortgages on 3 others and which actively and vigorously protested proceeding by owners of 5 lots to relieve their lots of restrictions to residence use, under record showing that owners of 7 lots were joined as defendants and that plaintiffs mailed out 114 copies of the order of publication and only 7 were returned (Court Rule No 16 [1945]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur, Parties § 46.
[2, 4] 39 Am Jur, Parties § 48.
[5] 58 Am Jur, Zoning § 196, et seq.

3. SAME—CLASS SUIT—SUFFICIENCY OF NOTICE.

> Notice of class suit by owners of 5 lots in subdivision containing
> 127 lots *held*, sufficient, where proceeding to relieve plaintiffs'
> lots of restrictions to residence use named owners of 7 lots as
> defendants, served at least 5 of them and mailed 114 copies
> to other owners, including appellant, and only 7 were returned,
> publication of the order of publication was had for 3 weeks,
> and appellant who had developed the subdivision voluntarily
> appeared and vigorously opposed the proceeding and trial
> court gave tacit recognition that sufficient parties were before
> him to adequately represent the rights of all of the class
> (Court Rule No 16 [1945]).

4. SAME—CLASS SUIT—JURISDICTION—NOTICE—REPRESENTATION.

> Other members of class against whom proceeding was brought to
> relieve plaintiffs' 5 lots from restrictions to residence use
> *held*, adequately notified of the suit; adequately represented
> by developer and subdivider who appeared in response to notice
> that was mailed to it and 113 others, owners of 122 lots in the
> subdivision, and actively and vigorously opposed the suit; and
> therefore, that the trial court, under the circumstances, had
> jurisdiction to adjudicate the various interests (Court Rule No
> 16 [1945]).

5. COVENANTS—TRAFFIC INCREASE—CHANGE IN NEIGHBORHOOD—
EXISTING NONCONFORMANCE—VALUE—REMOVAL OF ZONING RESTRIC-
TIONS.

> Validly imposed restrictions to residence use of plaintiffs' 5 lots
> were properly removed in their suit against other owners of
> 122 lots in subdivision, where since the subdivision was opened
> in 1939 the traffic on the thoroughfare to which the lots abut
> has sharply increased, there are extensive neighborhood changes,
> there is existing nonconforming user, an increased commercial
> value as opposed to nonexistent residential value and voluntary
> relaxation by the municipality of the prior zoning restrictions
> on plaintiffs' lots.

Appeal from Wayne; Murphy (George B.), J.
Submitted June 5, 1957. (Docket No. 19, Calendar
No. 47,159.) Decided March 6, 1958.

Bill by Thomas E. Dipboye and others against
Robert A. Acchione and others, individually and as
representatives of a class, to invalidate building and
use restrictions on property, the suit being actively

defended solely by Newman Farms, Inc., a Michigan corporation, subdivider and developer thereof. Decree for plaintiffs. Defendant appeals. Affirmed.

*Dunbar Davis,* for plaintiffs.

*Levin, Levin, Garvett & Dill (Morris Garvett* and *Gordon I. Ginsberg,* of counsel), for defendant Newman Farms, Inc.

VOELKER, J. Plaintiffs are the owners of 5 vacant lots (2, 3, 4, 8 and 9) fronting on Plymouth road in the city of Livonia, said lots being part of Alden Village subdivision, which contains 127 lots. Appellant is the owner of 2 lots in this subdivision and holds mortgages on 3 more. Plaintiffs filed their bill of complaint below seeking a declaration by the court that their 5 lots should not be subject to the building and use restrictions applicable to all lots in the subdivision. These restrictions were imposed by the appellant developer and subdivider of the land in a declaration of restrictions recorded in 1939.

Plaintiffs acquired their lots subject to these restrictions. With the exception of lot 1 these restrictions—insofar as they concern us—provided in general that all lots in the subdivision should be used "for private residence purposes only." Owners of 7 of the 127 lots were named and joined below as defendants, the plaintiffs proceeding under Court Rule No 16 (1945) and describing their suit as a class action. Two of these named defendants were dismissed out by plaintiffs before hearing, in at least one case for lack of service. Other lot owners were sought to be served through the medium of a published order of publication supplemented by copies mailed to them by ordinary mail. Appellant was not one of the named defendants but, in response to the publication and mailing, voluntarily appeared and

answered the bill of complaint and actively participated below through to a decree abrogating the restrictions on plaintiffs' lots and further adjudging that the decree was binding on appellant and all other lot owners in the subdivision. Appellant has carried the laboring oar in defending this litigation and was the only lot owner in the subdivision to voluntarily appear and contest the action. From the decree below, the appellant has appealed here. Further pertinent facts will be disclosed as this opinion proceeds.

On this appeal, as below, appellant argues 2 main propositions. The first is that this was not a proper class action; that the rights of lot owners not named or joined could not thus properly be adjudicated; that the service made on these other lot owners was inadequate; and that they were consequently denied due process of law. The second is that in any event the plaintiffs failed to make out a meritorious case entitling them to the relief granted.

On the first point the appellant asks in effect: "How can so few thus conclude the rights of so many?" It urges that this case is not within either the spirit or wording of the following court rule, especially that portion of Court Rule No 16 (1945) which provides that:

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, 1 or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued."

Appellant further urges that in any case there was no proof offered below or finding made by the court that such impracticability existed, and further that all lot owners could readily have been named and joined because the plaintiffs were able to and in fact did mail 114 copies of the order of publication, of

which only 7 were returned. It further urges that of these few defendants actually joined most were named because they were "straw" defendants who were actually favorable to removing the restrictions.

Court Rule No 16, adopted in 1945, was adapted from Court Rule No 23(a) of the Federal rules of civil procedure. While interim cases construing this new version of the rule have naturally not been many, Honigman (Honigman, Michigan Court Rules Annotated, p 100) opines that "It undoubtedly extends the field in which class actions were available under the common law." While we do not doubt that the plaintiffs conceivably *could* have joined all the lot owners, we believe the real question to be whether under the rule they had to. The record indicates that there were over 127 lots in the subdivision and over 60 homes (only 1 of which was on Plymouth road) and that prior to suit the plaintiffs checked the county records to obtain the names of the 114 people they did mail notices to.

. We think it would be manifestly impracticable if not impossible to adequately "freeze" the various recorded and unrecorded ownership interests of so many persons on any given day when suit might be commenced—entirely aside from the cumbersome expense and delay of serving all of them. We feel that this is precisely the sort of impracticability the court rule was designed to relieve. All that the rule itself requires is that under proper circumstances only 1 or more need "sue or be sued." Appellant concedes that the vast majority of the ownership interests in the subdivision in fact received actual notice of pendency of the action, yet it—the developer and subdivider that imposed the original restrictions—was the only one to appear and defend. We can offhand think of no more appropriate "one" better situated to represent the many than this particular appellant itself. Lastly the fact that the

court below heard the case and granted the relief he did is in our opinion sufficient tacit recognition and finding by him that sufficient parties were before him to adequately represent the rights of all of the class.

Appellant complains that the notice given was inadequate. It appears at least to have been adequate enough to have rapidly got it in the case wearing its fighting trunks. Moreover the record shows the order of publication was published for 3 weeks in addition to the noted mailing. In *American State Savings Bank, Trustee,* v. *American State Savings Bank,* 288 Mich 78 (decided some 6 years prior to the adoption of the cited new version of Court Rule No 16), the notice to the members of the class was by publication only. We there not only held that this method of notice was adequate but commended its use. Indeed there is language in that case (pp 88, 89) that even this need not have been done once there was adequate representation of the class actually in the case. In these situations the question seems to be not so much how the representation got there as that it was actually in the case adequately representing the rights of the class, no matter how selfish its own personal motives may have been. Plaintiffs here thus appear to have done more than they perhaps needed to.

In this case the imposer of the original restrictive covenants appeared and spiritedly and ably defended the action to decree. It has equally spiritedly and ably prosecuted this appeal. On this record we cannot fairly bring ourselves to hold that the other members of the class were not adequately notified of suit, or that their common interests were not adequately represented, or, finally, that under these circumstances the decree below could not have properly adjudicated those various interests, assuming

the result was otherwise correct. We now turn to this latter question.

Was the court below warranted by the facts and applicable law in removing the restrictions from plaintiffs' lots? As noted, the record indicates that the appellant owns 2 out of the 127 lots in the subdivision; further that both lots are approximately 1,500 feet from plaintiffs' lots; that these 2 lots are vacant and located in another neighborhood on another street and are just about as far away from plaintiffs' lots as they could get and still remain in the same subdivision; that an employee of appellant testified below that the proposed commercial use of plaintiffs' lots along Plymouth road would have no effect whatever on the value of appellant's lots.

The record further shows that in 1952 the city of Livonia rezoned all lots fronting on Plymouth road (except 2 extreme westerly lots in the subdivision on which a house had earlier been built) from residential to commercial; that there are 11 lots fronting on this road in the subdivision comprising a total frontage of 1,340 feet; that the largest lot, lot 1 (owned by others), comprises 330 feet of this frontage and is both by restriction and municipal zoning open to possible commercial use; that just west of vacant lot 1 some of the plaintiffs' lots and those of others fronting on Plymouth road either had or have 1 or more commercial signs or billboards on them; that 1 of plaintiffs' lots is used for a fruit stand in summer and the sale of Christmas trees in winter; and that 730 feet of the subdivision's total 1,340 feet frontage on Plymouth road either has been or can be used for commercial purposes, of which plaintiffs own 505 feet.

Proof was further adduced below that there is no existing market for these lots for residential purposes but that individual lots could be sold for as high as $20,000 for commercial purposes; that

Plymouth road is now a 4-lane main arterial high-way between Detroit and Chicago officially designated as US-12; that upwards of 15,000 motor vehicles pass along that way daily; that there are large factories and industrial plants located not far from plaintiffs' lots, both on the east and west. Thus we have evidence here of sharply increased traffic, extensive neighborhood changes, existing nonconforming user, increased commercial value as opposed to nonexistent residential value, plus an official recognition of the actualities of the situation by the noted voluntary action of the municipality in itself relaxing its prior zoning restrictions on these same lots.

We recognize that the presence of one or all of these factors puts no automatic compulsion on our courts to permit the lifting of validly imposed building restrictions and further that it is hard, if not impossible (and, also, probably undesirable), for us to seek to impose a universal yardstick to fit every such situation (*Hamburger* v. *Kramp,* 268 Mich 611, 613). But after a careful review of this record and the able briefs of counsel we find we cannot fairly say that on the evidence before him the chancellor below reached a wrong result either on his facts or his law. The situation here is not essentially unlike that which confronted us in *Austin* v. *Van Horn,* 255 Mich 117. See, also, *Golden* v. *Davis,* 266 Mich 7.

The decree below must accordingly be affirmed, with costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and EDWARDS, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.